RYMER, Circuit Judge, with whom KOZINSKI, O’SCANNLAIN, TALLMAN and CALLAHAN, Circuit Judges,
join, dissenting:
This is altogether infelicitous.
On the one hand, the Kamehameha Schools is a well-recognized, widely-acclaimed private school, established before Hawaii became a state, whose primary mission has been to educate Native Hawaiian students in a culturally sensitive, challenging way. It receives no federal funds and does not operate for profit. Its purpose of providing meaningful access to educational opportunity is intuitively salutary. On the other hand, the admissions policy of the Kamehameha Schools prefers students of Native Hawaiian ancestry in such a way that, as a practical matter, nonNative Hawaiian students are precluded.
The question is whether Kamehameha’s admissions policy violates 42 U.S.C. § 1981. Section 1981 was originally enacted as part of the 1866 Civil Rights Act, and confers on “[a]ll persons ... the same right in every State ... to make and enforce contracts as is enjoyed by white citizens .... ”
We do not write on a clean slate, otherwise I would question how a statute that accords to all persons the same right to contract as is enjoyed by white citizens can mean the same right to contract as is enjoyed by Native Hawaiians. Yet it was held long ago that § 1981 applies to persons of any race, McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), and more recently, that Native Hawaiian ancestry can be a proxy for race, Rice v. Cayetano, 528 U.S. 495, 514, 120 S.Ct. 1044, 145 L.Ed.2d 1007 (2000).[1] Likewise, I would have difficulty understanding how § 1981 applies to a purely private, philanthropieally-endowed, non-profit educational institution. However, it was also held long ago that § 1981 applies to private transactions, Tillman v. Wheaton-Haven Recreation Assn., 410 U.S. 431, 440, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973), including to contracts for educational services,[2] Runyon v. McCrary, 427 U.S. 160, 96 S.Ct. 2586, 49 *886 L.Ed.2d 415 (1976).[3] But see Jones v. Alfred H. Mayer Co., 392 U.S. 409, 449-76, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968) (Harlan, J., dissenting from application of the similarly-worded 42 U.S.C. § 1982 to private discrimination in the sale or rental of property); Runyon, 427 U.S. at 192-214, 96 S.Ct. 2586 (White, J., dissenting). Finally, because education is the greatest inheritance of all, I have difficulty understanding what business it is of the federal government to tell a Native Hawaiian that she can’t choose to help other Native Hawaiians whom she believes particularly need it.
This said, I am not persuaded that precedent allows the Kamehameha Schools to justify its preferential admissions policy on the footing that the policy redresses past societal discrimination against Native Hawaiians. The majority and dissenting opinions agree that we are guided by Title VII standards.[4] I agree with Judge Bybee that when, as here, a voluntary, private, affirmative action plan is at issue, the test is whether it eliminates a manifest racial imbalance, does not unnecessarily trammel the rights of non-preferred groups or create an absolute bar to their advancement, and makes adjustments that do no more than necessary to obtain a racial balance. United Steelworkers of America v. Weber, 443 U.S. 193, 208-09, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979); see Rudebusch v. Hughes, 313 F.3d 506, 521 (9th Cir.2002) (breaking the Weber standard into these three factors).
Obviously, the Kamehameha Schools itself has never discriminated against Native Hawaiians; it is dedicated to serving them. Thus, the articulated justification for its race-based admissions policy is to remedy external discrimination, not internal imbalance. Even if a private educational enterprise has more wiggle room in defining its core mission in a race-conscious way than a private employer, to legitimate a race-based policy solely on account of discrimination by others is to put no bounds on it at all. To do so would render meaningless the factors that influenced the Supreme Court in Weber to approve a voluntary, private, affirmative action plan. 443 U.S. at 208-09, 99 S.Ct. 2721. A private entity’s progress toward achieving “balance” cannot realistically be assessed if measured against society as a whole rather than its own work force or its own student body. But, even if a private party should be able to assume a public responsibility for remediation of past societal discrimination, the acceptable goal of a race-conscious admissions policy for a public educational institution is to achieve a diverse student body. Grutter, 539 U.S. at 325, 123 S.Ct. 2325 (endorsing the view that student body diversity is a compelling state interest that can justify the use of race in public university admissions). The purpose of Kamehameha Schools and its admissions policy is, of course, just the opposite. That, in a nutshell, is why I feel bound to reverse.
*887 Beyond this, I agree with Judge Bybee that Congressional applause for programs that benefit Native Hawaiians neither connotes approval of an exclusionary admissions policy based on racial preference, nor grafts an exception onto § 1981. I also agree that Morton v. Mancari, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974), does not save the Kamehameha policy. Mancan involved a federal employment preference for persons of tribal ancestry that the Court upheld against a Fifth Amendment challenge because tribes, which are federally-recognized, are a political, rather than a racial, classification. 417 U.S. at 553-55, 94 S.Ct. 2474. However, the Court has since declined to extend Mancan to an Hawaii statutory scheme that restricted voting for certain state officials to those of Native Hawaiian ancestry. Rice, 528 U.S. at 518-23, 120 S.Ct. 1044.
As no other basis appears for affirming, I would reverse.

. See also Saint Francis College v. Al-Khazraji, 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) (holding that § 1981 protects against discrimination based on ancestry).

. Neither party discusses whether the right to "contract” is implicated by the kind of subsidized educational opportunity offered by the Kamehameha Schools. Cf. Runyon, 427 U.S. at 172, 96 S.Ct. 2586 (noting that the private, commercially operated schools being sued there for excluding qualified children solely because they were black would have received payments for services rendered, and the prospective students would have received instruction in return for those payments).

. The Court noted both points — that § 1981 applies to any race and to a contract for educational services — in Gratz v. Bollinger, 539 U.S. 244, 276 n. 23, 123 S.Ct. 2411, 156 L.Ed.2d 257 (2003) (citing McDonald and Runyon with apparent approval).

. See Patterson v. McLean Credit Union, 491 U.S. 164, 186-87, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (embracing Title VII framework in § 1981 case). But see Grutter v. Bollinger, 539 U.S. 306, 343, 123 S.Ct. 2325, 156 L.Ed.2d 304 (2003) (observing that "the prohibition against discrimination in § 1981 is co-extensive with the Equal Protection Clause”), and Gratz, 539 U.S. at 276 n. 23, 123 S.Ct. 2411 (noting that “purposeful discrimination that violates the Equal Protection Clause of the Fourteenth Amendment will also violate § 1981”).